

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL LEE ANDREWS TRUST, et al., | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CASE NO. 3:02CV1076-H |
| | § | |
| PETER LICARI, FREDERICK H. EHMANN, STEVE FISHMAN, ETHAN LEDER, AND MICHAEL D'ARCANGELO, | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

## DEFENDANT ETHAN LEDER'S BRIEF IN SUPPORT OF MOTION TO DISMISS

SOPUCH ARNETT HIGGINS &
 GAUBERT, L.L.P.
J. Robert Arnett II
State Bar No. 01332900
Jamil N. Alibhai
State Bar No. 00793248
4650 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
(214) 760-0900
(214) 760-0905 (Facsimile)

QUARLES & BRADY STREICH
 LANG, L.L.P.
John J. Dawson
John A. Harris
Two N. Central Avenue
Phoenix, Arizona 85004
(602) 229-5200
(602) 229-5690 (Facsimile)

**ATTORNEYS FOR DEFENDANT ETHAN LEDER**

12

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................... 1

    A.    This Action ............................................... 1

    B.    The Two Previous Actions ................................... 2

III.   ARGUMENT AND AUTHORITIES ................................... 4

    A.    The Standard For Evaluating A Motion Under Federal Rule of Civil Procedure 12(b)(2) ....................................... 4

        1.    The factual burden of proof ................................ 4

        2.    The legal standard ..................................... 5

    B.    Plaintiffs Cannot Establish Personal Jurisdiction Over Leder ................ 6

        1.    Plaintiffs have allegedly only one contact by Leder with the State of Texas ...................................... 8

        2.    Leder's contacts do not support the existence of general jurisdiction ...................................... 8

        3.    Leder's contacts do not support the existence of specific jurisdiction ...................................... 9

        4.    Plaintiffs fail to establish the "purposeful direction" and "knowledge" elements required for their tort claims ............. 9

    C.    Plaintiffs Have Released Their Claims Against Leder .................... 11

        1.    Pleadings filed by plaintiffs and relevant orders entered thereon should be considered by the court ................. 11

        2.    The Complaint should be dismissed because all claims alleged by Plaintiffs were expressly satisfied and released ..... 11

    D.    The Complaint Should Also Be Dismissed For Failure To State A Claim ..... 13

i

1. Plaintiffs' conspiracy claim should be dismissed because
it falls outside the statute of limitations, fails to state a claim,
and is not plead with particularity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

2. The conversion claim is barred by the statute of limitations . . . . . . . . . 16

3. The tortious interference claim is also barred by the
statute of limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

4. The participation in breach of fiduciary duty claim should
be dismissed for failure to state a claim . . . . . . . . . . . . . . . . . . . . . . . . . 17

5. The violation of the Texas Security Act claim fails to
state a claim and is not plead with particularity . . . . . . . . . . . . . . . . . . . 18

6. The fraud in stock transaction claim fails to state a claim
and is not plead with particularity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

7. The alter ego claim fails to state a claim . . . . . . . . . . . . . . . . . . . . . . . . . 20

E. No Basis Exists To Toll The Statute Of Limitations . . . . . . . . . . . . . . . . . . . . . . 21

1. Plaintiffs are not entitled to the benefits of the discovery rule . . . . . . . . 21

2. Plaintiffs are not entitled to tolling by the fraudulent
concealment doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

3. Plaintiffs are not entitled to a continuing tort defense . . . . . . . . . . . . . . 24

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES</u>

*Ackerman v. U.S.*, 178 F.2d 983 (5th Cir. 1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Arthur, Ross & Peters v. Housing, Inc.*, 508 F.2d 562 (5th Cir. 1965) . . . . . . . . . . . . . . . . . . . . . 9

*Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102 (1987) . . . . . . . . . . . . . 5

*Ashlar Financial Servs., Corp. v. Sterling Finance Co.*, No.CIV.A.300CV2814-AH,
2002 WL 206439 (N.D. Tex. Feb. 8, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,16

*Bennett Indus., Inc. v. Laher*, 557 F.Supp. 965 (N.D. Tex. 1983) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Board of Trustees of the Internal Improvement Fund v. Charley Toppino & Sons, Inc.*,
514 F.2d 700 (5th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Burchfield v. Stein*, No.CIV.A.3:01-CV-2529, 2002 WL 318341
(N.D. Tex. Feb. 27, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5,8,11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

*Deininger v. Deininger*, 677 F.Supp. 486 (N.D. Tex. 1988) . . . . . . . . . . . . . . . . . . . . . . . 9,10,11

*Dominion Gas Ventures v. N. L. 5., Inc.*, 889 F.Supp. 265 (N.D. Tex. 1995) . . . . . . . . . . . . . . 9

*Dumdei v. Certified Financial Planner Board of Standards, Inc.*, No.CIV.398CV1938H,
1999 WL 787402 (N.D. Tex. Oct. 1, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Electric & Gas Technology, Inc. v. Mazurek*, No.CIV.A.301CV2756G,
2002 WL 1125086 (N.D. Tex. May 28, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Felch v. Transportes Lar-Mex S.A. de C.V.*, 92 F.3d 320 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . 4

*Freshman v. Atkins*, 269 U.S. 121 (1925) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hawkins v. Upjohn Co.*, 890 F.Supp. 601 (E.D. Tex. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) . . . . . . . . . . . . . . 6,8

*Hernandez v. Ciba-Geigy Corp. USA*, No.CIV.A.B-00-82, 2000 WL 33187524
(S.D. Tex. Oct. 17, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Herrmann Holdings, Ltd. v. Lucent Techs. Inc.*, No.CIV.A.301CV0625G,
2001 WL 1295496 (N.D. Tex. Oct. 5, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,21

*In re Costal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re the Matter of Placid Oil Co.*, 932 F.2d 394 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Steeley,* 243 B.R. 421 (Bankr. N.D. Ala. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Urcarco Securities Litig.*, 148 F.R.D. 561 (N.D. Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . 16

*Interphase Corp. v. Rockwell Intn'l Corp.*, No.3:96-CV-0290-P,
1997 WL 182276 (N.D. Tex. April 4, 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9

*ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518 (5th Cir. 2001) . . . . . . . . . 14,17

*Jackson Marine Corp. v. Blue Fox*, 845 F.2d 1307 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . 11

*Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kisiel v. RAS Securities Corp.*, No.3:01-CV-294-X, 2001 WL 912425
(N.D. Tex. August 9, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 11

*Malone v. Dallas City Manager's Office*, 3:01-CV-0447-H, 2001 WL 910396
(N.D. Tex. Aug 3, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,14

*Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 5,11

*Martinez Tapia v. Chase Manhattan Bank*, 149 F.3d 404 (5th Cir. 1998) . . . . . . . . . . . . . . . . . 23

*Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Memorial Hosp. System v. Blue Cross and Blue Shield of Arkansas*,
830 F.Supp. 968 (S.D. Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003 (5th Cir. 1982) . . . . . . . . . 9

*Porter v. Charter Medical Corp.*, 957 F.Supp. 1427 (N.D. Tex. 1997) . . . . . . . . . . . . . . . . 22,24

*Prieto v. John Hancock Mutual Life Insur.*, 132 F.Supp.2d 506 (N.D. Tex. 2001) . . . . . . . . 23,25

iv

*R.T.C. v. Boyar, Norton & Blair*, 796 F.Supp. 1010 (S.D. Tex. 1992) . . . . . . . . . . . . . . . . . . . 22

*Sadd v. PS II, Inc.*, No.EP-99-CA-400-DB, 2000 WL 33348735
(W.D. Tex. March 21, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,14

*Saktides v. Cooper*, 742 F.Supp. 382 (W.D. Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,9

*Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . 24,25

*Southern Bleacher Co. v. Husco, Inc.*, No.7:01-CV-009-R
2001 WL 49772 (N.D. Tex. May 7, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,7,8,9,11

*Southmark Corp. v. Life Investors*, 851 F.2d 763 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . 10,11

*St. Claire v. Ensurelink*, No.CIV.A.3:01CV1548-G, 2002 WL 663570
(N.D. Tex. April 19, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7

*Star Technology, Inc. v. Tultex Corp.*, 844 F.Supp. 295 (N.D. Tex. 1993) . . . . . . . . . . . . . . . . . 9

*Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,7

*Thomas v. Kadish* , 748 F.2d 276 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. North Am. Constr. Corp.*, 173 F.Supp.2d 601 (S.D. Tex. 2001) . . . . . . . . 21,22

*U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wilson v. Belin*, 20 F.3d 644 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994) . . . . . . . . . . . . 4,5,6,8

*William v. WMX Techs., Inc.*, 112 F.3d 175 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Woodson v. Copeland Trucking*, No.CIV.A.3:01-CV-2216,
2002 WL 245975 (N.D. Tex. Feb. 15, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,8

*World-Wide Volkswagen Corp. v. Goodson*, 444 U.S. 286 (1980) . . . . . . . . . . . . . . . . . . . . . . . 6

*Zuckerman v. Foxmeyer Health Corp.*, 4 F.Supp.2d 618 (N.D. Tex. 1998) . . . . . . . . . . . . . . . 16

## STATE CASES

*Arabian Shield Development Co. v. Hunt*, 808 S.W.2d 577
(Tex. App.—Dallas 1991, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Chandler v. Chandler*, 991 S.W.2d 367 (Tex. App.—El Paso 1999, pet. denied) . . . . . . . . . . 16

*Computer Associates Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453 (Tex. 1996) . . . . . . . . . . . . 23,24

*Conoco, Inc. v. Amarillo National Bank*, 14 S.W.3d 325 (Tex.App.—Amarillo 2000, no pet.) . 23

*Dickinson Construction Inc. v. Fidelity and Deposit Co. of Maryland*, 960 S.W.2d 845
(Tex.App.—Texarkana 1997, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Hamlett v. Holcomb*, 69 S.W.3d 816 (Tex. App. —Corpus Christi 2002, n.w.h.) . . . . . . . . . . 18

*Jim Arnold Corp. v. Bishop*, 928 S.W.2d 761 (Tex.App.—Beaumont 1996, no writ) . . . . . . . 25

*John Masek Corp. v. Davis* 848 S.W.2d 175 (Tex. App.—Houston
[1ˢᵗ Dist.] 1992, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193 (Tex. 2002) . . . . . . . . . . . . . . . . . . 17,18

*Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348 (Tex. 1990) . . . . . . . . . . . . . . . . . . . . . . . . 24

*Murray v. San Jacinto*, 800 S.W.2d 826 (Tex. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Pineda v. PMI Mortgage Ins. Co.*, 843 S.W.2d 660 (Tex. App.—Corpus Christi 1992, writ
denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Schoellkopf v. Pledger*, 778 S.W.2d 897 (Tex. App.—Dallas 1989, writ denied) . . . . . . . . 14,17

*S.V. v. R.V.*, 933 S.W.2d 1 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Tilton v. Marshall*, 925 S.W.2d 672 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## **STATUTES**

TEX. BUS. & COMM. CODE § 27.01(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,21

TEX. REV. CIV. STAT. art. 581-33(H)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,20

FED. R. CIV. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

FED. R. CIV. P. 12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

FED. R. EVID. 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## I.

## INTRODUCTION

Plaintiffs loaned money between 1993 and 1998 to a group of companies that operated nursing homes, which loans were not repaid when the companies went bankrupt in 1998. This action is Plaintiffs' third lawsuit attempting to recover some of their losses from increasingly remote groups of defendants based on increasingly tenuous claims. Indeed, Plaintiffs' claims against Ethan Leder are beyond tenuous, and should be dismissed because there is no personal jurisdiction over him, the claims have been released, the claims are barred by the statute of limitations, and the Complaint fails to allege valid claims against Leder.

## II.

## FACTUAL & PROCEDURAL BACKGROUND

**A.    This Action.**

The claims in the Complaint[1] are based on transactions Plaintiffs had with Chartwell Healthcare, Inc. and related entities ("Chartwell"), which were a group of affiliated companies that operated nursing homes in several states. Plaintiffs allege that they entered into long-term promissory notes with Chartwell and that Chartwell granted them a lien in Chartwell's accounts receivable. Plaintiffs' current claims are predicated on their alleged status as unpaid lien creditors of Chartwell whose lien interests were somehow "harmed" by Leder and other Defendants.

Plaintiffs admit that HCFP Funding, Inc. ("HCFP") was a public company that was the working capital lender to the Chartwell entities and that HCFP asserted a lien against the

---

[1]See Plaintiffs' First Amended Complaint and Jury Demand, dated July 12, 2002 (the "Complaint").

**DEFENDANT ETHAN LEDER'S BRIEF IN SUPPORT OF MOTION TO DISMISS — PAGE 1**

accounts receivable of the Chartwell entities. Every claim for relief asserted against Leder is predicated on acts allegedly done by Leder in his representative capacity for HCFP. HCFP is not named as a defendant by Plaintiffs (for good reason, as Plaintiffs have dismissed with prejudice all claims of any kind against HCFP and its successor-in-interest by merger, Heller Healthcare Finance, Inc. ("Heller")).

**B.    The Two Previous Actions.**

Plaintiffs began litigation relating to the Chartwell entities when they filed a complaint against certain directors and officers of the Chartwell entities in this Court on May 28, 1999.[2] The Third Amended Complaint (the "D&O Complaint"), dated February 11, 2000, is incorporated by citation and reference into the Complaint.[3]

Chartwell and its subsidiaries are also the debtors in jointly administered Chapter 7 bankruptcy cases pending before this Court (the "Chartwell Bankruptcy Cases").[4]   The Chapter 7 Trustees in the Chartwell Bankruptcy Cases commenced an adversary proceeding against Plaintiffs and various other defendants (including HCFP/Heller) (the "Chartwell Adversary").[5] The primary focus of the Chartwell Adversary was the validity and relative priority of security interests in Chartwell's accounts receivable claimed by HCFP/Heller and Plaintiffs. In the Chartwell Adversary, Plaintiffs (known there as the "East Texas Note Holders") filed cross-

---

[2]*See* Case No. 99-CV-1242, (the "D&O Case").

[3]*See* Complaint ¶ 175. A certified copy of the D&O Complaint is attached to the Appendix in Support of Ethan Leder's Motion to Dismiss ("App") filed herewith as Exhibit 1.

[4]*See* Chapter 7 Case Nos. 98-38546-SAF-7, 98-38547-SAF-7 (Jointly Administered).

[5]*See* Adversary Proceeding No. 99-3273.

claims against HCFP/Heller on February 11, 2000.[6] A comparison of the substantive factual allegations made by Plaintiffs in their Amended Cross-Claims against HCFP/Heller with the substantive factual allegations made in the Complaint against Leder shows that the allegations *are virtually identical*.[7] The only significant difference is that Plaintiffs simply inserted Leder's name in the place of place of HCFP/Heller.[8]

Plaintiffs' claims in the Chartwell Adversary have been settled. Plaintiffs negotiated and agreed that their receipt of a cash payment would be in complete satisfaction and release of all Plaintiffs' claims of any kind arising from or in any way related to Chartwell and Plaintiffs' transactions with Chartwell.[9] The Stipulation was executed by Plaintiffs, HCFP/Heller, and the Chartwell Trustees and was filed with the Bankruptcy Court in the Adversary Proceeding, and the Bankruptcy Court approved the Stipulation pursuant to a final order incorporating the Stipulation ("the Stipulation Order").[10]

---

[6]*See* East Texas Noteholders Answer, Counterclaim, and Third Party Cross-Claims, dated February 11, 2000, (the "Cross-Claims"), filed in the Chartwell Adversary Proceeding at Docket No. 15. A certified copy of the Cross-Claims are attached to the App. as Exhibit "2"; *see also* See East Texas Noteholders Second Amended Counterclaim and Amended Cross-Claims and Third Party Claims, dated January 8, 2002 (the "Amended Cross-Claims"), filed in the Chartwell Adversary Proceeding at Docket No. 179. A certified copy of the Amended Cross-Claims are attached to the App. as Exhibit "3".

[7]A side by side comparison of the primary substantive factual allegations made in the two pleadings is attached to the App. as Exhibit "6" (the "Side by Side Comparison").

[8]*See id.*

[9]*See* Stipulation For Settlement, Release, And Dismissal With Prejudice Of All Claims Of The East Texas Noteholders (Except Only Those Claims Expressly Reserved In The Stipulation) (the "Stipulation") dated as of April 26, 2002. The Stipulation provides that the only claims of Plaintiffs that were not released were four specifically defined "Reserved Claims," none of which are, or could be, the subject of the Complaint against Leder.

[10]See Order Approving And Directing Implementation Of The Parties' Stipulation For Settlement, Release, And Dismissal With Prejudice Of All Claims Of The East Texas Noteholders (Except Only Those Claims Expressly Reserved In The Stipulation) (the "Stipulation Order"), dated May 6, 2002, filed in the Adversary Proceeding at Docket No. 272. A certified copy of the Stipulation Order

**DEFENDANT ETHAN LEDER'S BRIEF IN SUPPORT OF MOTION TO DISMISS** — **PAGE 3**

## III.

## ARGUMENT & AUTHORITIES

**A.**     **The Standard For Evaluating A Motion Under Federal Rule of Civil Procedure 12(b)(2).**

**1.**     **The factual burden of proof**.

The plaintiff bears the burden of establishing personal jurisdiction over the non-resident defendant.[11]   Where the district court does not require an evidentiary hearing, the plaintiff must establish a *prima facie* case in order to prevent dismissal.[12]   Under the *prima facie* standard, the Court can only take the allegations of the complaint as true if they are not controverted by opposing affidavits.[13]   Courts are required to resolve all factual conflicts of the parties' affidavits in favor of the plaintiff.[14]   However, bare allegations with no admissible evidentiary support will not defeat a dismissal for lack of personal jurisdiction.[15]

---

is attached to the App. as Exhibit "4".   A copy of the Stipulation is attached to the Stipulation Order.

[11]*Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir.), *cert. denied,* 513 U.S. 930 (1994); *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985); *Burchfield v. Stein,* No. Civ.A. 3:01-CV-2529, 2002 WL 318341, at *4 (N.D. Tex.  Feb. 27, 2002).

[12]*Wilson,* 20 F.3d at 648; *Burchfield,* 2002 WL 318341, at *2.  Where an evidentiary hearing is conducted, the plaintiff must meet its burden of proof by the preponderance of the evidence.  *See Felch v. Transportes Lar-Mex S.A. de C.V.,* 92 F.3d 320, 326 (5th Cir. 1996).

[13]*Wilson,* 20 F.3d at 648; *Burchfield,* 2002 WL 318341, at *2.

[14]*Wilson,* 20 F.3d at 648; *Burchfield,* 2002 WL 318341, at *2.

[15]*Woodson v. Copeland Trucking,* No. Civ.A. 3:01-CV-2216, 2002 WL 245975, *3 (N.D. Tex. Feb. 15, 2002); *Burchfield,* 2002 WL 318341, at *2; *Southern Bleacher Co. v. Husco, Inc.,* No. 7:01-CV-009-R 2001 WL 49772, at *6 (N.D. Tex. May 7, 2001).

**DEFENDANT ETHAN LEDER'S BRIEF IN SUPPORT OF MOTION TO DISMISS — PAGE 4**

2.      **The legal standard**.

A federal court's personal jurisdiction derives from the forum state's long arm statute, which in Texas extends as far as the reach of due process under the Constitution.[16]  Due process is satisfied when two factors are met: (1) the non-resident defendant must have purposefully availed himself of the benefits of the forum state by establishing minimum contacts with the state such that he should reasonably anticipate being haled into court there; and (2) the assertion of jurisdiction over the non-resident defendant must not offend the traditional notions of fair play and substantial justice.[17]

The "minimum contacts" inquiry requires the Court to determine whether the non-resident defendant has purposefully availed himself of the privilege of conducting activities within the State of Texas, thus invoking the benefits and protections of its laws.[18]  Two types of personal jurisdiction, specific or general, may be exercised over the non-resident defendant.[19]

Specific jurisdiction is proper if the cause of action specifically arises out of or relates to the non-resident defendant's contact with the forum state.[20]  Additionally, the non-resident's activities in Texas must justify a conclusion that the non-resident should have reasonably anticipated being haled into a court in Texas.[21]  Where the non-resident purposefully reaches out

---

[16]*See Marathon Oil Co. v. Ruhrgas*, 182 F.3d 291, 294 (5th Cir. 1999).

[17]*Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987).

[18]*See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985).

[19]*See Ruhrgas*, 182 F.3d at 295.

[20]*See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

[21]*See World-Wide Volkswagen Corp. v. Goodson*, 444 U.S. 286, 297 (1980).

**DEFENDANT ETHAN LEDER'S BRIEF IN SUPPORT OF MOTION TO DISMISS** — PAGE 5

and creates a substantial connection with the citizens of the forum state, he has purposefully availed himself of the privilege of conducting business in the forum state.[22]

General jurisdiction exists when the contacts of the non-resident with Texas are "continuous and systematic."[23] Thus, under a general jurisdiction analysis, the contacts must be so substantial that a non-resident could anticipate being sued on any matter in Texas.[24] Consequently, the minimum contacts analysis is even more demanding under general jurisdiction.[25]

**B.**    **Plaintiffs Cannot Establish Personal Jurisdiction Over Leder**.

Plaintiffs' jurisdictional allegations consist of reciting the minimum contacts standard and then attempting to attribute every action that Leder took in his representative capacity for HCFP as an action on his own behalf.[26] The Fifth Circuit recognizes that actions taken by a corporate representative on behalf of his corporation cannot be used to establish personal jurisdiction over the representative in his individual capacity.[27] Where a corporate representative uses the corporation merely as his alter ego, the fiduciary shield will not prevent his actions on behalf of

---

[22]*See Burger King*, 471 U.S. at 475-476.

[23]*See Helicopteros*, 466 U.S. at 415.

[24]*See Wilson*, 20 F.3d at 650.

[25]*See St. Claire v. Ensurelink*, No. CIV.A.3:01CV1548-G, 2002 WL 663570, at *3 (N.D. Tex. April 19, 2002).

[26]*See Complaint ¶ 80.

[27]*See Spademan*, 772 F.2d at 1197-98; *Electric & Gas Technology, Inc. v. Mazurek*, No.Civ.A.301CV2756G, 2002 WL 1125086, at *6 (N.D. Tex. May 28, 2002); *Saktides v. Cooper*, 742 F.Supp. 382, 385-86 (W.D. Tex. 1990).

the corporation from being used to meet the minimum contacts test.[28]  Here, at all times alleged

by Plaintiffs, however, Leder was acting in his capacity as HCFP President.[29]

At no time did Leder take any of the actions alleged for the benefit of anyone but his

employer, HCFP.[30]  Plaintiffs do not dispute this by pleading any alter ego facts pertaining to

Leder.[31]  Rather, Plaintiffs generically plead that all Defendants are the alter egos of 22

Acquisition Corporation ("22 Acquisition").[32]  Leder, however, had *no relationship*, economic or

otherwise with 22 Acquisition, other than by virtue of HCFP's acting as a lender to 22

Acquisition, which creates no basis for an alter ego claim.[33]  Plaintiffs' failure to plead any facts

supporting alleged alter ego control by Leder of 22 Acquisition or HCFP warrants dismissal.[34]

Plaintiffs must present *prima facie* facts, not bare allegations, to support their alter ego claim,

and their failure to do so should result in dismissal of the Complaint.[35]

---

[28]*See Spademan*, 772 F.2d at 1197; *Mazurek*, 2002 WL 1125086, at *6.

[29]*See* Declaration of Ethan Leder ¶¶ 6, 14-15 (App. 362-64), dated July 26, 2002, attached to the App. as Exhibit 5 ("Leder Decl.").

[30]*See* Leder Decl. ¶ 6, 14, 20 (app. 362-65).

[31]*See also Spademan*, 772 F.2d at 1197.

[32]*See* Complaint ¶¶ 179-180.

[33]*See* Leder Decl. ¶ 21 (App. 365).

[34]*See Spademen*, 772 F.2d at 1198; *Mazurek*, 2002 WL 1125086, at *6; *Ensurelink*, 2002 WL 663570, at *4; *Southern Bleacher*, 2001 WL 497772, at *6; *Sadd v. PS II, Inc.*, No. EP-99-CA-400-DB, 2000 WL 33348735, *5-6 (W.D. Tex. March 21, 2000); *Saktides*, 742 F.Supp. 386-87.

[35]*See Woodson*, 2002 WL 245975, *3; *Burchfield*, 2002 WL 318341, at *2; *Southern Bleacher*, 2001 WL 49772, at *6; *Kisiel v. RAS Securities Corp.*, No. 3:01-CV-294-X, 2001 WL 912425, at *6 (N.D. Tex. August 9, 2001).

**DEFENDANT ETHAN LEDER'S BRIEF IN SUPPORT OF MOTION TO DISMISS — PAGE 7**

1.    **Plaintiffs have alleged only one contact by Leder with the State of Texas**.

The only specific allegation regarding Leder's contacts with Texas is the that Leder was called by Peter Licari from Dallas, Texas on August 2, 1998.[36]  Thus, Plaintiffs ask this Court to base personal jurisdiction on *one phone call from Texas* to Leder.[37]

2.    **Leder's contacts do not support the existence of general jurisdiction.**

Leder, a resident of Washington, D.C., clearly has not had "continuous and systematic contacts" with Texas.[38]  The sum of Leder's Texas contacts include: (1) contacts based on his position at HCFP; (2) one visit for a wedding; and (3) on visit to run a marathon.[39]  Leder does not possess any of the contacts that support finding general jurisdiction such as having bank accounts, owning property, or being employed in Texas.[40]  Leder's combined contacts do not constitute purposeful availment for minimum contacts purposes.[41]  Under similar situations, courts have found that such sporadic contacts simply cannot meet the high burden of general jurisdiction.[42]

---

[36]*See* Complaint ¶ 130.

[37]Even reviewing the ninety-eight page D&O Complaint, Leder's name is not mentioned one time, and therefore offers no basis for jurisdiction.  *See generally* D&O Complaint.

[38]*See Helicopteros*, 466 U.S. at 415.

[39]*See* Leder Decl. ¶ 6 (App. 362).

[40]*See Wilson*, 20 F.3d at 649-650; Leder Decl. ¶ 2.

[41]*See Helicopteros*, 466 U.S. at 471 (rejecting general jurisdiction over a non-resident corporation that negotiated a contract in, purchased equipment from, and trained employees in the forum state); *Interphase Corp. v. Rockwell Intn'l Corp.*, No.3:96-CV-0290-P, 1997 WL 182276, at * 3-4 (N.D. Tex. April 4, 1997).

[42]*See Star Technology, Inc. v. Tultex Corp.*, 844 F.Supp. 295, 298 (N.D. Tex. 1993); *Deininger v. Deininger*, 677 F.Supp. 486, 493-94 (N.D. Tex. 1988); *Memorial Hosp. System v. Blue Cross and Blue Shield of Arkansas*, 830 F.Supp.968, 973-74 (S.D. Tex. 1993).

**DEFENDANT ETHAN LEDER'S BRIEF IN SUPPORT OF MOTION TO DISMISS — PAGE 8**

3. <u>**Leder's contacts do not support the existence of specific jurisdiction**</u>.

Plaintiffs' sole contact allegation, a call from Texas to Leder, cannot support specific jurisdiction because it is a unilateral activity by someone else (in this case another non-resident of Texas).[43] Furthermore, communications alone, even where torts are alleged, normally do not constitute purposeful availment for specific jurisdiction.[44] Furthermore, it offends fair play and substantial justice, and therefore violates due process, to force Leder, a person acting solely in his capacity as HCFP President, to defend lawsuits based on contacts that are limited to mail and telephone conversations anywhere he may have made calls or written letters on his employer's behalf.[45]

4. <u>**Plaintiffs fail to establish the "purposeful direction" and "knowledge" elements required for their tort claims**</u>.

Plaintiffs attempt to plead that Leder acted outside Texas to cause an effect inside of Texas.[46] In order to satisfy the requirements of specific jurisdiction based on the effects of a tort, it must be shown that the "alleged tortfeasor's intentional actions were *purposefully directed* toward the forum state and that the tortfeasor had *knowledge* that the brunt of the injury would be felt by a particular resident of the forum state."[47] Merely alleging that the effects of a tort are felt

---

[43] *See Southern Bleacher*, 2001 WL 487772, at * 2, citing *Helicopteros*, 466 U.S. at 417.

[44] *See Dominion Gas Ventures v. N. L. 5., Inc.*, 889 F.Supp. 265, 269 (N.D. Tex. 1995); *Bennett Indus., Inc. v. Laher*, 557 F.Supp. 965, 967 (N.D. Tex. 1983) citing *Arthur, Ross & Peters v. Housing, Inc.*, 508 F.2d 562, 564-65 (5th Cir. 1965); *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1007 n. 2 (5th Cir. 1982).

[45] *See Saktides*, 742 F.Supp. at 387.

[46] *See generally* Complaint.

[47] *See Hawkins v. Upjohn Co.*, 890 F.Supp. 601, 608 (E.D. Tex. 1994), citing *Southmark Corp. v. Life Investors*, 851 F.2d 763, 772-73 (5th Cir. 1988).

<u>**DEFENDANT ETHAN LEDER'S BRIEF IN SUPPORT OF MOTION TO DISMISS — PAGE 9**</u>

in Texas does not establish personal jurisdiction.[48] Similarly, just because a non-resident defendant deals with a Texas resident (here, Chartwell, as there are no allegations Leder dealt with any of the Plaintiffs), personal jurisdiction is not thereby established.[49]

Plaintiffs' generic conspiracy claims are the exact type of allegations that courts routinely dismiss on personal jurisdiction grounds.[50] There is no allegation that Leder took any actions in furtherance of a conspiracy in Texas.[51] Plaintiffs' allegations hinge on Leder's alleged knowledge of the existence and residency of Plaintiffs before Chartwell's conclusion of the 22 Acquisition deal on August 3, 1998.[52] However, Leder had no personal knowledge of the existence of any of the Plaintiffs, or their residency, or any of their alleged lien claims until sometime after late August 1998.[53] *A fortiori*, Leder had no personal knowledge of any of these matters in February 1998, when HCFP made the Chartwell loan and obtained a first priority lien position in Chartwell's accounts receivable, and Plaintiffs do not allege otherwise. The fact that Plaintiffs happened to be investors from Texas was a mere fortuity and is insufficient to establish personal jurisdiction.[54]

---

[48]*See Thomas v. Kadish*, 748 F.2d 276, 282 (5th Cir. 1984); *Hawkins*, 890 F.Supp. at 608; *Deininger*, 677 F.Supp. at 493.

[49]*See Southmark*, 851 F.2d at 773.

[50]*See Kadish*, 748 F.2d at 282; *Hawkins*, 890 F.Supp. at 607-08; *Deininger*, 677 F.Supp. at 493.

[51]*See* Complaint ¶¶ 150-180.

[52]*See* Complaint ¶ 118.

[53]*See* Leder Decl. ¶ 7-8, 17-18 (App. 362-65).

[54]*See Southmark*, 851 F.2d at 773. Because Plaintiffs are suing Leder in his individual capacity, they cannot impute the knowledge of HCFP to Leder to establish his knowledge. *See Jackson Marine Corp. v. Blue Fox*, 845 F.2d 1307, 1310 (5th Cir. 1988).

**DEFENDANT ETHAN LEDER'S BRIEF IN SUPPORT OF MOTION TO DISMISS — PAGE 10**

Finally, failure to properly plead and prove fraud warrants a dismissal on personal jurisdiction grounds.[55]  Plaintiffs' failure to show that the alleged false statements either occurred in Texas or were directed at Texas is fatal.[56]

## C.    Plaintiffs Have Released Their Claims Against Leder.

### 1.    Pleadings filed by plaintiffs and relevant orders entered thereon should be considered by the court.

The Fifth Circuit has held that "courts may also consider matters of which they may take judicial notice" when deciding motions to dismiss under Federal Rule of Civil Procedure 12(b).[57]  Matters as to which judicial notice may be taken are well defined in the Fifth Circuit and include pleadings and court orders on file with the Court.[58]

### 2.    The Complaint should be dismissed because all claims alleged by Plaintiffs were expressly satisfied and released.

Plaintiffs allege that they were issued various promissory notes by Chartwell and that, pursuant to these transactions, they hold a lien in the accounts receivable generated by the Chartwell entities.[59]  Plaintiffs' claims are predicated, on their face, on Plaintiffs having the

---

[55]*See Southern Bleacher*, 2001 WL 497721, at * 5; *Denninger*, 677 F.Supp. at 483; *Burchfield*, 2002 WL 318341, at * 6.

[56]*See Ruhrgas*, 182 F.3d at 295; *see also* Leder Decl. ¶ 7, 9, 14 (App. 362-64).

[57]*Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996) citing FED. R. EVID. 201(f) ("Judicial notice may be taken at any stage of the proceeding.").

[58]*See In re Steeley*, 243 B.R. 421, 427-28 n. 10 (Bankr. N.D. Ala. 1999); *see also Freshman v. Atkins*, 269 U.S. 121, 124, 46 S.Ct. 41, 42, 70 L.Ed. 193 (1925); *Board of Trustees of the Internal Improvement Fund v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975); *ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343, 344 (5th Cir. 1981); *Kinnett Dairies, Inc. v. Farrow*, 580 F.2d 1260, 1277 (5th Cir. 1978); and *Ackerman v. U.S.*, 178 F.2d 983, 985 (5th Cir. 1949), *aff'd*, 340  U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950).

[59]*See* Complaint at ¶¶ 82-87.

---

status of unpaid lien creditors of Chartwell whose liens were somehow harmed by Leder.[60]

Plaintiffs now allege such claims against Leder despite having released all such claims pursuant

to the Stipulation and the Stipulation Order.  The language of the Stipulation is explicit on this

point:

> 3.    In full release and satisfaction of all claims of the Noteholders (except only the "Reserved Claim" specified in paragraph 4 hereof[)] arising from or related in any way to the Chartwell Debtors and/or any transaction(s) of the respective Noteholders with any of the Chartwell Debtors, including, without limitation, all claims of the Noteholders asserted or that could have been asserted as proofs of claim, claims for relief, counterclaims, cross-claims, and/or third party claims in the Bankruptcy Cases and/or the Adversary Proceeding (collectively, the "Released Claims"), the Noteholders will be paid the following cash amounts, totaling $400,000. . . "

> 4.    In and for the purposes of this Stipulation, all claims of any kind of the Noteholders described in paragraph 3 above are, and will be deemed, Released Claims.[61]

The Stipulation provides that, as part of the global satisfaction and release of Chartwell

related claims, all claims of Plaintiffs (except Reserved Claims) against HCFP/Heller and

Chartwell were satisfied and released.[62]  Plaintiffs' claims against Leder must be dismissed

because the predicate for those claims (that they are unpaid lien creditors of Chartwell whose

liens were somehow harmed by HCFP/Heller– and now they allege by Leder)  is not and cannot

be true under the satisfaction and release provisions of the Stipulation they negotiated and

signed.

---

[60]*See generally* Complaint.

[61] Stipulation ¶¶ 3-4 (emphasis added).  There are only four (4) narrow "Reserved Claims", which are identified specifically in Paragraph 4 of the Stipulation. *See* Stipulation ¶ 4.  None of the claims asserted by Plaintiffs in the Complaint are Reserved Claims.

[62]*See* Stipulation at ¶ 5.

Moreover, to the extent Plaintiffs somehow could assert claims against Leder relating to Chartwell, any such claims could have been asserted as "claims for relief, counterclaims, cross-claims, and/or third party claims" in the Chartwell Bankruptcy Cases and/or the Chartwell Adversary. Consequently, any such claims are barred by the express release language of Paragraph 3 of the Stipulation. A simple comparison of the allegations of Plaintiffs' Cross-Claims in the Chartwell Adversary with their allegations against Leder in the Complaint reveals that the claims are virtually identical, pleading the same alleged conduct with the substitution of Leder's name for HCFP/Heller.[63] Therefore, the claims must be dismissed.

### D. The Complaint Should Also Be Dismissed For Failure To State A Claim.

In addition to dismissal for lack of personal jurisdiction over Leder, the Complaint should also be dismissed for failure to state a claim on numerous grounds. A complaint should be dismissed for failure to state a claim when it appears that a plaintiff can plead no set of facts in support of his claim which would entitle him to relief.[64] To avoid dismissal, a plaintiff "'must plead specific facts, not conclusory allegations.'"[65] The Court will not accept as true any conclusory allegations.[66] When a plaintiff's cause of action is based on fraud, he must plead with particularity.[67] As discussed below, each of Plaintiffs' claims requires dismissal.

---

[63]*See* Side by Side Comparison (App. 367-76).

[64]*See Malone v. Dallas City Manager's Office*, 3:01-cv-0447-H, 2001 WL 910396, *3, 4 (N.D. Tex. Aug 3, 2001) (Sanders, J.).

[65]*Id.* at *2.

[66]*Id.*

[67]*Id.* (citing FED. R. CIV. P. 9(b)).

**DEFENDANT ETHAN LEDER'S BRIEF IN SUPPORT OF MOTION TO DISMISS — PAGE 13**

1. **Plaintiffs' conspiracy claim should be dismissed because it falls outside the statute of limitations, fails to state a claim, and is not plead with particularity.**

Plaintiffs assert the existence of a conspiracy to: (1) defraud, (2) tortiously interfere, (3) convert, and (4) conceal the conspiracy. In Texas, conspiracy is not an independent tort but is rather based on an underlying tort.[68] For an actionable conspiracy to exist, Defendants must be liable to Plaintiffs on the tort theories pleaded.[69] As discussed below, each tort theory fails as a matter of law and thus, no conspiracy to do those things can exist.

Three additional reasons also support dismissal of Plaintiffs' conspiracy claim. First, Plaintiffs' conspiracy claim should be dismissed because the statute of limitations for a civil conspiracy claim is two years.[70] According to the Complaint, the conduct which allegedly caused Plaintiffs harm took place during 1997 and 1998 and was completed by August 1998.[71] Plaintiffs expressly knew about their injury as early as July 1998 and by no later than September 1998:

> 139. By letter dated September 14, 1998, recognizing that the Plaintiffs were the parties most affected by the demise of Chartwell and the fraudulent conveyance of its assets, Irving Boyes, offered to convert the unpaid principal balance of their notes to a pro rata reduction of one of the two $2 million subordinated notes from 22 Acquisition Corporation. Some of the Plaintiffs accepted the assignment, but no payments were ever made to any of them under the notes.

---

[68]*See Hernandez v. Ciba-Geigy Corp. USA*, No. Civ.A. B-00-82, 2000 WL 33187524, *4 (S.D. Tex. Oct. 17, 2000); *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) ("Civil conspiracy . . . might be called a derivative tort. That is, a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable.") (citation omitted).

[69]*See Schoellkopf v. Pledger*, 778 S.W.2d 897, 900 (Tex. App.—Dallas 1989, writ denied).

[70]*Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 523 (5th Cir. 2001).

[71]*See* Complaint at 15-34, ¶¶ 82-140.

141.    Charwell defaulted on all of the Plaintiffs' notes by failing to pay installments due July 1998 and thereafter.[72]

\* \* \*

213.    After missing a payroll due on July 31, 1998, the States of Florida, Missouri, and Texas commenced receivership proceedings for all of Chartwell's nursing homes. . . .

214.    Each of the Chartwell subsidiaries identified above defaulted on their notes to Plaintiffs by failing to pay monthly principal and interest due July 1998 and thereafter.  It wasn't until 1999, when discovery commenced in Chartwell's bankruptcy proceedings that Plaintiffs discovered that the corporations that sold and issued promissory notes to Plaintiffs were mere shell corporations with no security interest to convey.[73]

In light of these allegations, Plaintiffs' conspiracy claim is barred by the statute of limitations.

Second, with respect to Plaintiffs' allegations of conspiracy to defraud and conceal the conspiracy, Plaintiffs are required to plead fraud with particularity.[74]  Lumping the defendants together and failing to segregate the alleged wrongdoing of one defendant from another does not meet the requirements of Rule 9(b).[75]  In this Circuit, pleading fraud with particularity requires the "'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'"[76]  Articulating the

_____

[72]Complaint at 34, ¶¶ 139, 141.

[73]D&O Complaint at 83-84, ¶¶ 213-14 (App. 83-84).

[74]See Ashlar Financial Servs., Corp. v. Sterling Finance Co., No. CIV. A. 300CV2814-AH, 2002 WL 206439, \*3 (N.D. Tex. Feb. 8, 2002) ("Fifth Circuit precedent holds that a civil conspiracy to commit a tort that sounds in fraud must be pleaded with particularity."); see also FED. R. CIV. P. 9(b).

[75]See In re Urcarco Securities Litig., 148 F.R.D. 561, 569 (N.D. Tex. 1993), affirmed Melder v. Morris, 27 F.3d 1097 (5th Cir.1994); see also Zuckerman v. Foxmeyer Health Corp., 4 F. Supp. 2d 618, 622 (N.D. Tex. 1998) ("[T]he plaintiff is obligated to distinguish among those they sue and enlighten each defendant as to his or her part in the alleged fraud.").

[76]William v. WMX Techs., Inc., 112 F.3d 175, 178 (5th Cir. 1997) (alteration in original).

**DEFENDANT ETHAN LEDER'S BRIEF IN SUPPORT OF MOTION TO DISMISS — PAGE 15**

elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.[77]  Because Plaintiffs lump Leder and the other Defendants together and because they fail to identify the "who, what, where, when, and how" of the alleged conspiracy to defraud and conceal, those claims should be dismissed.

The final reason for dismissing Plaintiffs' conspiracy claim relates to the claim that Leder and the other Defendants allegedly conspired "to cover up the Agreement and Participation of the Defendants."[78]  "Fraudulent concealment is not an independent cause of action."[79]  Thus, to the extent Plaintiffs are alleging a conspiracy based on some alleged concealment, the conspiracy claim should be dismissed.[80]

### 2.   The conversion claim is barred by the statute of limitations.

Conversion is "the wrongful exercise of the dominion and control over another's property in denial of or inconsistent with his rights."[81]  The statute of limitations on a conversion claim is two (2) years.[82]  Plaintiffs' cause of action accrued and limitations began to run when a wrongful act caused a legal injury.[83]  Plaintiffs allege that Leder and the other Defendants somehow

---

[77]*Id.*

[78]Complaint at 37.

[79]*Chandler v. Chandler*, 991 S.W.2d 367, 394 (Tex. App.—El Paso 1999, pet. denied) (citing *Arabian Shield Development Co. v. Hunt*, 808 S.W.2d 577, 584 (Tex. App.—Dallas 1991, writ denied).

[80]*See Schoellkopf*, 778 S.W.2d at 900.

[81]*Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 210 n.44 (Tex. 2002).

[82]*Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 523 (5th Cir. 2001).

[83]*Id.* at 523-24.

**DEFENDANT ETHAN LEDER'S BRIEF IN SUPPORT OF MOTION TO DISMISS — PAGE 16**

converted their "secured property, healthcare receivables, and the proceeds thereof."[84]  The conversion is alleged to have occurred by mid-1998 and Plaintiffs were aware of their legal injury when Chartwell defaulted on their notes in July 1998.  Furthermore, Plaintiffs knew in 1999 that they did not have a security interest.[85] Thus, Plaintiffs' conversion claims are barred by the statute of limitations.

### 3. The tortious interference claim is also barred by the statute of limitations.

Plaintiffs' tortious interference claim is not filed within the two (2) year statute of limitations.[86]  Plaintiffs allege that Leder and the other Defendants tortiously interfered with Plaintiffs' note contracts.[87]  Plaintiffs' cause of action accrued no later than July 1998, when they stopped receiving payments, and thus, their complaint falls outside of the statute of limitations.  Furthermore, Plaintiffs were aware by 1999 that their alleged security interest did not exist.[88]

### 4. The participation in breach of fiduciary duty claim should be dismissed for failure to state a claim.

Plaintiffs do not allege that Leder owed them a fiduciary duty.[89]  Rather, they allege that HCFP owed Plaintiffs a fiduciary duty "by virtue of its possession and control of collateral in excess of HCFP's indebtedness which was previously pledged as security to the Plaintiffs."[90]

---

[84]Complaint at 39, ¶ 157.

[85]D&O Complaint at ¶ 214 (App. 83-84).

[86]*See Jackson*, 245 F.3d at 523.

[87]*See* Complaint at 41, ¶¶ 162 and 163.

[88]D&O Complaint at ¶ 214 (App. 83-84).

[89]*See generally* Complaint; *see also* Complaint at 42-43, ¶¶ 165-69.

[90]*See* Complaint at 42, ¶ 166.

(Although Plaintiffs make this conclusory allegation for purposes of the claim, the specific facts of the Complaint plead that HCFP collected millions less than it had advanced.[91]) Plaintiffs fail to state a claim for two reasons.

First, as a matter of law, HCFP did not owe Plaintiffs a fiduciary duty.[92] Thus, Leder cannot be sued for participating in the breach of a duty that did not exist.[93] Second, given that Leder was an agent of HCFP, he could not have participated in breaching his own principal's alleged duty.[94]

### 5. The violation of the Texas Security Act claim fails to state a claim and is not plead with particularity.

Plaintiffs allege that their promissory notes constitute investment contracts and securities under the Texas Securities Act.[95] Plaintiffs then contend that Leder and the other Defendants "violated the antifraud provisions of the Texas Securities Act."[96] Plaintiffs have failed to state a claim and have failed to plead this claim with particularity as required by Rule 9(b).

The Texas Securities Act makes a person "who offers or sells a security" by means of untruth or omission "liable to the person buying the security from him."[97] Plaintiffs do not allege

---

[91]*Id.* at 22-23.

[92]*See Johnson*, 73 S.W.3d at 199-200.

[93]*See Hamlett v. Holcomb*, 69 S.W.3d 816, 820 (Tex. App. -–Corpus Christi 2002, n.w.h.).

[94]*See John Masek Corp. v. Davis* 848 S.W.2d 175 (Tex. App. -–Houston [1ˢᵗ Dist.] 1992, writ denied).

[95]*See* Complaint at 44, ¶ 171.

[96]*Id.* ¶ 172.

[97]*See* TEX. REV. CIV. STAT. art. 581-33(A)(2).

**DEFENDANT ETHAN LEDER'S BRIEF IN SUPPORT OF MOTION TO DISMISS — PAGE 18**

that Leder sold them a security, that they bought securities from him, or that he made any false representations to any of them.  Thus, Plaintiffs fail to state a claim and cannot state a claim against Leder.

Plaintiffs' claim also should be dismissed for failing to plead with particularity.[98]  The particularity requirement is especially important here because Plaintiffs admit that they purchased the promissory notes from May 1993 through March 1998.[99]  In light of the statute of limitations governing this claim,[100] the required particularity would allow Leder to move to dismiss this claim on statute of limitations grounds as well.  Further, upon dismissal of the underlying Texas Securities Act claim, the attorneys' fees claim based thereon should be dismissed as well.[101]

### 6. The fraud in stock transaction claim fails to state a claim and is not plead with particularity.

Plaintiffs allege that Leder and the other Defendants committed fraud in a stock transaction by "benefitting from false representations and promises made by Chartwell officers and directors to the Plaintiffs."[102]  Plaintiffs have failed to state a claim as a matter of law and have failed to plead this claim with particularity as required by Rule 9(b).

---

[98]*See Herrmann Holdings, Ltd. v. Lucent Techs. Inc.*, No. CIV. A. 301CV0625G, 2001 WL 1295496, *5 (N.D. Tex. Oct. 5, 2001); FED. R. CIV. P. 9(b).

[99]Complaint at 15, ¶¶ 82-83.

[100]*See* TEX. REV. CIV. STAT. art. 581-33(H)(2).

[101]*See* Complaint at 46, ¶ 183.

[102]*See* Complaint at 44, ¶ 175; *see also id.* at 44-45, ¶ 175.

To state a claim for relief under Texas Business & Commerce Code Section 27.01, a plaintiff must first show the transaction involves "stock in a corporation or joint stock company."[103]  Plaintiffs make no such allegation; rather, they contend that the fraud centered around promissory notes — which are not stock.[104]  Given that the Fifth Circuit has held that the statute is penal in nature and must be strictly construed, Plaintiffs' promissory notes-based claim cannot state a claim under section 27.01.[105]

In addition, Plaintiffs have failed to allege other requirements of the statute including: (1) that Leder made a false representation "for the purpose of inducing [them] to enter into a contract," and (2) that Plaintiffs relied on that representation "in entering into that contract."[106] Finally, the claim should also be dismissed for failure to plead the alleged fraud with particularity.[107]  Further, upon dismissal of the underlying fraud in a stock transaction claim, the attorneys' fees claim based thereon should be dismissed as well.[108]

### 7.    The alter ego claim fails to state a claim.

Courts will dismiss alter ego claims pursuant to Rule 12(b)(6) where the plaintiff "'alleges no facts that, if proved, would . . . permit a court to impose liability'" on the

---

[103]TEX. BUS. & COMM. CODE § 27.01(a).

[104]See U.S. Quest Ltd. v. Kimmons, 228 F.3d 399, 406 (5th Cir. 2000).

[105]See id.

[106]See TEX. BUS. & COMM. CODE § 27.01(a); Pineda v. PMI Mortgage Ins. Co., 843 S.W.2d 660, 673-674 (Tex. App.—Corpus Christi 1992), writ denied, 851 S.W.2d 191 (Tex. 1993) (per curiam).

[107]See Herrmann Holdings, Ltd. v. Lucent Techs. Inc., No. CIV. A. 301CV0625G, 2001 WL 1295496, *5 (N.D. Tex. Oct. 5, 2001); FED. R. CIV. P. 9(b).

[108]See Complaint at 46, ¶ 183.

defendant.[109]  The Fifth Circuit has enunciate twelve factors to be used when assessing whether a subsidiary is the alter ego of its parent, none of which are alleged to be present by Plaintiffs here.[110]  As in *North American*, Plaintiffs' Complaint does not allege facts that, if true, would support liability based on an alter ego theory.[111]  This claim, should therefore, be dismissed.

**E.**     **No Basis Exists To Toll The Statute Of Limitations.**

    **1.**     **Plaintiffs are not entitled to the benefits of the discovery rule.**

Because Plaintiffs have pleaded state law claims, this Court should apply Texas state law to any tolling claims.[112]  The discovery rule defers the accrual period for statute of limitations purposes until the plaintiff discovered or should have discovered, in the exercise of reasonable diligence, the injury.[113]  The discovery rule is only applicable to causes of action where the nature of the injury incurred is inherently undiscoverable and the evidence of the injury is objectively verifiable.[114]  An injury is inherently undiscoverable when the nature of the injury is unlikely to be discovered even through the exercise of reasonable diligence.[115]  The focus is upon the *category* of injury, and not the particular facts surrounding the injury.[116]  A party invoking the

---

[109]*See United States v. North Am. Constr. Corp.*, 173 F.Supp.2d 601, 643 n.35 (S.D. Tex. 2001).

[110]*Id.* at 643-44.

[111]*Id.* at 644.

[112]*See Porter v. Charter Medical Corp.*, 957 F.Supp. 1427, 1431 n.2 (N.D. Tex. 1997).

[113]*See S.V. v. R.V.*, 933 S.W.2d 1, 6-7 (Tex.1996).

[114]*See id.* at 6.

[115]*See id* at 7.

[116]*See id* at 6.

discovery rule bears the burden of pleading facts to establish it as a statute of limitations defense.[117]

Plaintiffs' discovery rule pleadings are deficient for three reasons. First, Plaintiffs have failed to plead any *facts* that establish that discovery of this type of category of alleged injury (*ie.* loss of a priority lien status in collateral) is inherently undiscoverable and objectively verifiable.[118] An injury is inherently undiscoverable when the nature of the injury is unlikely to be discovered, even through the exercise of due diligence.[119] Parties that claim security interests cannot rely on the discovery rule to protect them from the statute of limitations because they have a duty to protect their own interests.[120]

Furthermore, Plaintiffs' D&O Complaint filed on February 11, 2000, also proves this alleged injury is not inherently undiscoverable.[121] Not only were Plaintiffs able to discover their injury (the loss of collateral), they were able to file a ninety-seven page complaint within two years of the default on the notes.[122] Therefore, even if the discovery rule applied, all of the two year statute of limitations claims of conversion, civil conspiracy, and tortious interference are

---

[117]*See R.T.C. v. Boyar, Norton & Blair*, 796 F.Supp. 1010 (S.D. Tex. 1992).

[118]Discovery rule allegations are made at ¶¶ 145, 149, and 173. However, at in none of these paragraphs are facts plead to support the discovery rule test.

[119]*See In re Costal Plains, Inc.*, 179 F.3d 197, 215 (5th Cir. 1999) citing *Computer Assocs.*, 918 S.W.2d at 455-56.

[120]*See Martinez Tapia v. Chase Manhattan Bank*, 149 F.3d 404, 409 (5th Cir. 1998); *Prieto v. John Hancock Mutual Life Insur.*, 132 F.Supp.2d 506, 514 (N.D. Tex. 2001); *Conoco, Inc. v. Amarillo National Bank*, 14 S.W.3d 325, (Tex.App. —Amarillo 2000, no pet.).

[121]*See* D&O Complaint ¶ 210 (App. 83).

[122]*See* Third Amended Complaint at 97.

**DEFENDANT ETHAN LEDER'S BRIEF IN SUPPORT OF MOTION TO DISMISS — PAGE 22**

barred because Plaintiffs knew of their injury as early as July 1998, and no later than May 1999, when they sued Chartwell's officers.

Second, Plaintiffs have failed to plead any facts regarding their exercise of due diligence to discover their injury.  Third, the discovery rule is a very narrow exception that determines the accrual of the injury as the point at which a person discovered or should have discovered the injury.[123]  Thus, allegations as to when Leder's involvement was fully discovered, or when the full extent of Plaintiffs' injuries became known, are irrelevant.[124]

### 2.    <u>Plaintiffs are not entitled to tolling by the fraudulent concealment doctrine</u>.

The doctrine of fraudulent concealment is an equitable doctrine that operates to toll the statute of limitations until a plaintiff knew or should have known through the exercise of reasonable diligence of their injury.[125]  However, fraudulent concealment only applies where a defendant is under a duty to disclose.[126]  If no such duty is pled or exists as a matter of law, Plaintiffs are not allowed to toll the statute of limitations.

Furthermore, Plaintiffs knew of their injuries by May 28, 1999, or at the very latest on February 11, 2000, thus, barring the two year statute of limitations claims.  Finally, Plaintiffs have failed to adequately plead fraudulent concealment.  Fraudulent concealment requires more

---

[123]*See Computer Assocs.*, 918 S.W.2d a 455.

[124]*See Moreno v. Sterling Drug,* Inc., 787 S.W.2d 348, 357 (Tex.1990) (noting that the discovery rule does not prevent accrual until the plaintiff discovers either all of the elements of causes of action or determines the responsible parties); *Porter*, 957 F.Supp. at 1438.

[125]*See Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 366 (5th Cir. 2000); *Dumdei v. Certified Financial Planner Board of Standards, Inc.*, No. Civ.398CV1938H, 1999 WL 787402, at *4 (N.D. Tex. Oct. 1, 1999).

[126]*See Seatrax*, 200 F.3d at 366; *Dumdei*, 1999 WL 787402, at *4.

than mere concealment.[127]  The elements of fraudulent concealment are (1) actual knowledge by the defendant that the wrong has occurred, and (2) a fixed purpose to conceal the facts necessary for the plaintiff to know it has a cause of action.[128]  Plaintiffs' sole allegation of fraudulent concealment by Leder, and the other generic allegations of concealment as to all Defendants, are mere conclusory allegations mirroring the wording of fraudulent concealment law and do not constitute substantive factual allegations.[129]

### 3.     **Plaintiffs are not entitled to a continuing tort defense.**.

A continuing tort is a type that is inflicted over a period of time (such as a trespass or false imprisonment).[130]  As a matter of law, "engaging in wrongful conduct that causes injury and then refusing to modify, reverse, or cease that conduct for some period of time thereafter does not constitute a continuing tort."[131]  There is no continuing tort here.

## IV.

## CONCLUSION

Considering the premises, Defendant Ethan Leder respectfully requests that the Court dismiss the Complaint with prejudice.

---

[127]*See Seatrax*, 200 F.3d at 366; *In re the Matter of Placid Oil Co.*, 932 F.2d 394, 399 (5th Cir.1991).

[128]*See Prieto,* 132 F.Supp.2d at 516.

[129]*See* Complaint ¶¶ 144, 146, 149, 151, 153, 173, 176.

[130]*See Dickinson Construction Inc. v. Fidelity and Deposit Co. of Maryland,*960 S.W.2d 845, 851 (Tex.App.–Texarkana 1997, no pet.); *Jim Arnold Corp. v. Bishop*, 928 S.W.2d 761, 765 (Tex.App.–Beaumont 1996, no writ).

[131]*See Dickinson*, 960 S.W.2d at 851; *see also Murray v. San Jacinto*, 800 S.W.2d 826, 828 (Tex. 1991).

**DEFENDANT ETHAN LEDER'S BRIEF IN SUPPORT OF MOTION TO DISMISS — PAGE 24**

Respectfully submitted, this 29th day of July, 2002.

**SOPUCH ARNETT HIGGINS & GAUBERT, LLP**

By: _____

    J. Robert Arnett II
    State Bar No. 01332900
    Jamil N. Alibhai
    State Bar No. 00793248

4650 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas  75201
Telephone:  (214) 760-0900
Telecopy:   (214) 760-0905

**QUARLES & BRADY STREICH LANG LLP**

John A. Harris
John Dawson
Renaissance One
Two North Central Avenue
Phoenix, Arizona 85004-2391
Telephone:  (602) 229-5200
Telecopy:   (602) 229-5690

**ATTORNEYS FOR DEFENDANT ETHAN LEDER**

## CERTIFICATE OF SERVICE

    I hereby certify that I caused the foregoing document to be duly served upon counsel for Plaintiff, Jeanne Crandall, Reyna, Hinds & Crandall, 1201 Elm Street, Suite 3850, Dallas, Texas 75270, by first class mail, on July 29, 2002.

_____
J. Sean Lemoine

S \HELLER\LEDER\PLEAD\DISMISS WPD

**DEFENDANT ETHAN LEDER'S BRIEF IN SUPPORT OF MOTION TO DISMISS — PAGE 25**